1  AARON D. FORD
   Attorney General
2  DOUGLAS R. RANDS, Bar No. 3572
   Senior Deputy Attorney General
3  State of Nevada
   100 N. Carson Street
4  Carson City, NV  89701-4717
   Tel: (775) 684-1150
5  E-mail: drands@ag.nv.gov

6  *Attorneys for Defendants*
   *Romeo Aranas, Isidro Baca, Shelly Conlin,*
7  *Richard Long, David Mar,*
   *Melissa Mitchell and William Miller*

8

9              **UNITED STATES DISTRICT COURT**

10                **DISTRICT OF NEVADA**

11  CHARLES MORRIS,
                                        Case No.  3:18-cv-00310-RCJ-CLB
12              Plaintiff,

13  vs.
                                        **JOINT PRE-TRIAL ORDER**
14  ROMEO ARANAS, et al.

15              Defendants.

16

17      Following pretrial proceedings in this case,

18      IT IS ORDERED:

19  I.      **NATURE OF ACTION AND CONTENTIONS OF THE PARTIES**

20      A.      **NATURE OF ACTION**

21      Plaintiff Charles Morris (Morris) is an inmate in the custody of the Nevada Department of

22  Corrections (NDOC) and currently incarcerated at Northern Nevada Correctional Center (NNCC).

23  Morris is proceeding on two claims: an Eighth Amendment deliberate indifference to serious medical

24  needs claim against Defendants Aranas, Long, Mitchell, and Mar, and an Eighth Amendment

25  deliberate indifference to serious threats to inmate's safety claim against Defendants Baca, Miller, and

26  Conlin. ECF No. 43.

27      On June 21, 2021, Defendants filed a Motion for Summary Judgment. (ECF No. 65).  Plaintiff

28  opposed (ECF No. 82) and filed a cross motion for summary judgment (ECF No. 83).  Defendants

                                        1

1   opposed Plaintiff's Motion for Summary Judgment. ECF No. 84. In an Order adopting and accepting

2   the Report and Recommendation of the U.S. Magistrate Judge, this Court denied Defendants' Motion

3   for Summary Judgment (ECF No. 65) and denied Plaintiff's Cross-Motion for Summary Judgment

4   (ECF No. 83).

5        Therefore, this matter is proceeding to trial

6        **B.    CONTENTIONS OF THE PARTIES**

7        **1.    Plaintiff's Contentions** *or should have known*

8        Morris alleges prison officials knew he had serious back problems and, repeatedly transferred

9   him to prisons with flat yards and delayed medical treatment by refusing to provide MRIs, then

10  delayed/denied surgery once an MRI confirmed the need for surgery. Instead of surgery, prison

11  officials issued Morris a walker and cane. Morris's delay in treatment led to *him falling* injuring himself on the

12  stairs, which led to the need for emergency surgery.

13      Morris alleges prison officials knew for *over* 15 years that he was classified to a lower tier, lower

14  bunk restriction, but in 20*17*, prison officials ordered Morris to a top tier and refused to move him to a

15  lower tier until he fell down the stairs and partially paralyzed himself.

16      **2.    Defendants' Contentions**

17      Defendants contend that the evidence does not support Plaintiff's allegations. Defendants

18  incorporate any Affirmative Defenses from the Answer as it pertains to the Defendants. Defendants

19  deny that Plaintiff's constitutional rights have been violated.

20      **C.    RELIEF SOUGHT**

21      Plaintiff seeks declaratory, compensatory, and punitive damages. *injunctive relief,*
    *court cost, out of pocket expense, attorney fee's, mental and emotional damages*

22  **II.   STATEMENT OF JURISDICTION**

23      This is a civil action commenced under 42 U.S.C. § 1983. This Court has jurisdiction pursuant

24  to 28 U.S.C. § 1331.

25  **III.  UNCONTESTED FACTS ADMITTED BY THE PARTIES WHICH REQUIRE NO PROOF**

26

27      1.    Mr. Morris, in this matter has filed a Complaint alleging violations of his constitutional

28  rights under the Eighth Amendment. (ECF No.6).

1    2.      At all times relevant in the Complaint, Plaintiff was in the lawful custody of the

2  Nevada Department of Corrections ("NDOC") housed at Northern Nevada Correctional Center

3  (NNCC) (ECF No. 6 at 1).

4    3.      Defendant Romeo Aranas was previously employed by the NDOC as a Medical

5  Director.

6    4.      Defendant David Mar was previously employed by the NDOC as a Senior Physician.

7    5.      Defendant Melissa Mitchell is currently employed by the NDOC as a Correctional

8  Nurse, III.

9    6.      Defendant Richard Long is currently a contract Physician with the NDOC.

10   7.      Defendant Isidro Baca was previously employed by the NDOC as a Warden.

11   8.      Defendant Shelly Conlin is currently employed by the NDOC as a Correctional

12  Caseworker, III.

13   9.      Defendant William Miller is currently employed by the NDOC as a Correctional

14  Lieutenant.

15   10.     Plaintiff suffered from back pain.

16   11.     Plaintiff was given a lower bunk, lower level designation.

17   12.     Plaintiff received medical consultations and evaluations.

18   13.     Plaintiff received MRI and other evaluations.

19   14.     Plaintiff was moved to a different cell due to contraband being found in his cell.

20   15.     Plaintiff fell down the stairs.

21   16.     Plaintiff had surgery, on an emergency basis after the fall.

22   17.     Plaintiff kited for medical attention throughout the time frame of this matter.

23   18.     Plaintiff filed grievances relating to his treatment.

24  **IV.    FACTS UNADMITTED THAT WILL NOT BE CONTESTED**

25       The following facts, though not admitted, will not be contested at trial by evidence to the

26  contrary: NONE

27  ///

28  ///

3

1   **V.      CONTESTED ISSUES OF FACT TO BE TRIED AND DETERMINED UPON TRIAL**

2        **A.      PLAINTIFF'S CONTESTED FACTS**

3        *See* Complaint.

4        **B.      DEFENDANTS' CONTESTED FACTS**

5        1.      Whether Plaintiff has met his burden of producing evidence supporting the facts set

6   forth above, i.e., whether he can prove that the individual defendants violated his Eighth Amendment

7   rights?

8        2.      Whether any form of damages are available to Plaintiff for any alleged failures?

9   **VI.     CONTESTED ISSUES OF LAW TO BE TRIED AND DETERMINED UPON TRIAL**

10       **A.      PLAINTIFF**

11       1.      Whether or not the claims against Defendants, violated Plaintiff's Constitutional rights,

12  and do the facts warrant a damage award?

13       **B.      DEFENDANTS**

14       1.      Did Defendants individually violate Plaintiff's constitutional rights?

15       2.      Did Mr. Morris prove the elements of a violation of his Eighth Amendment rights?

16  Prison officials have a duty to provide medical care for inmates, and the denial of medical care may

17  result in pain and suffering constituting cruel and unusual punishment in violation of the Eight

18  Amendment of the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials can be

19  deliberately indifferent to serious medical needs by "intentionally denying or delaying access to

20  medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05. To

21  establish a constitutional violation, an inmate must satisfy a two-part test: (1) that he has a "serious

22  medical need," the "failure of which to treat "could result in further significant injury or the

23  unnecessary and wanton infliction of pain"; and (2) that the "defendant's response to the need was

24  deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation

25  omitted). To determine whether the defendants' response was deliberately indifferent, an inmate must

26  show the following: (1) the defendants purposefully acted or failed to respond to the inmate's possible

27  medical need; and (2) the indifference caused harm." Id. Notably, defendants' conduct must

28

1   demonstrate "unnecessary and wanton infliction of pain" before it violates the Eighth Amendment.

2   *Estelle*, 429 U.S. at 104-05.

3        "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th

4   Cir. 2004). Every claim by an inmate that he has not received adequate medical treatment does not

5   constitute an Eighth Amendment violation. *Estelle*, 429 U.S. at 105. An inmate alleging deliberate

6   indifference to serious medical need "must allege acts or omissions sufficiently harmful" to the

7   inmate. *Id.* at 106. For example, a medical professional's mistake, negligence, or malpractice is not

8   sufficient to constitute deliberate indifference. *Toguchi*, 391 F.3d at 1060. A medical decision not to

9   order certain testing may qualify as medical malpractice, but it does not rise to the level of deliberate

10  indifference to a serious medical need. *Estelle*, 429 U.S. at 107-108. A difference of medical opinion

11  regarding course of treatment is insufficient to establish a claim of deliberate indifference to a serious

12  medical condition. *Toguchi*, 391 F.3d at 1058.

13       The "treatment a prisoner receives in prison and the conditions under which he is confined are

14  subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

15  Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *Rhodes v.*

16  *Chapman*, 452 U.S. 337, 347 (1981). However, "[p]rison officials have a duty to ensure that prisoners

17  are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson*

18  *v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

19       To challenge the conditions of confinement under the Eighth Amendment, a plaintiff must

20  meet both an objective test and subjective test. *Id.* The objective prong requires a showing that the

21  deprivation was sufficiently serious to form the basis for an Eighth Amendment violation. *Johnson* at

22  731. When determining whether the conditions of confinement meet the objective prong, the court

23  must analyze each condition to determine whether that specific condition violates the Eighth

24  Amendment. *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986). When considering the

25  conditions of confinement, a court also should consider the amount of time to which the prisoner was

26  subjected to the condition. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). Speculative and

27  generalized fears of harm do not rise to a sufficiently substantial risk of serious harm. *Williams v.*

28  *Wood*, 223 Fed. Appx. 670, 671, 2007 WL 654223, at 1 (9th Cir. 2007).

1    As to the second prong of the Eighth Amendment analysis, prisoners must establish prison
2    officials "deliberate indifference" to the unconstitutional conditions of confinement to establish an
3    Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To demonstrate that a
4    prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must
5    show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official
     *or should have known*
6    must both be aware of facts from which the inference could be drawn that a substantial risk of serious
7    harm exists, and [the official] must also draw the inference," (*Id.* at 837). Mere negligence is
8    insufficient to show a violation of the Eighth Amendment. (*Id.* at 835-36).

9    **VII.    EXHIBITS**

10           **A.    STIPULATED EXHIBITS AS TO AUTHENTICITY AND ADMISSIBILITY**

11           1.    Administrative Regulation 740.

12           **B.    STIPULATED EXHIBITS AS TO AUTHENTICITY BUT NOT**

13                 **ADMISSIBILITY**

14    None.

15           **C.    PLAINTIFF'S EXHIBITS SUBJECT TO OBJECTIONS**

16                 See attachment's:

25           **D.    DEFENDANT'S EXHIBITS SUBJECT TO OBJECTIONS**

26           1.    Plaintiff's Movement History Report;

27           2.    Plaintiff's Housing History Report;

28           3.    Plaintiff's Grievance file, including all relevant grievances;    *ob, to vague*

1   4.   Certified Judgment(s) of Conviction of Plaintiff for underlying offense (only if needed
2   for impeachment); ob, not relevent

3   5.   Plaintiff's Institutional File ("I-File"); ob, not relevent

4   6.   Grievance 2006-30-26975.

5   7.   Grievance 2006-30-63488

6   8.   Plaintiff's Medical Records and Consultation Reports.

7   9.   NOTIS Disciplinary History Report. ob, not relevent

8   10.   IR-2018-NNCC-000300.

9   11.   IR-2018-NNCC-002639.

10   12.   OIC 433158 reports.

11   13.   AR 707, "Inmate Disciplinary Process," effective May 16, 2017.

12   14.   AR 707.1, "Inmate Disciplinary Manual," effective February 22, 2017.

13   15.   AR 707.2, "Chart of Disciplinary Sanctions," effective February 13, 2017.

14   16.   Plaintiff's Case Notes as maintained on the NDOC NOTIS system from 2014 to
15   Present.

16   17.   All prison logs, registers, documents, or other form of data pertaining to any and all of
17   Plaintiff's claims. ob not relevent

18   18.   Any and all other exhibits that may support the statements of fact and law cited herein
19   and to rebut Plaintiff's statements, claims, and testimony. ob vague

20   19.   Any and all other exhibits that rebut witnesses that might be called to respond to claims
21   made by either Plaintiff or any of his proposed witnesses; ob

22   **E.   DEPOSITIONS**

23   1.   None.

24   **VIII.   WITNESSES**

25   **A.   PLAINTIFF'S WITNESSES:**

26   Plaintiff wishes to reserve the right to call the following persons:

27

28

1

2

3

4

5

6       **B.      DEFENDANT'S WITNESSES:**

7       Defendant wishes to reserve the right to call the following persons:

8       1.      Plaintiff Charles Morris, Inmate, NNCC;

9       2.      Isidro Baca, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N.
10      Carson St. Carson City, Nevada 89701-4717.

11      3.      Romeo Aranas, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N.
12      Carson St. Carson City, Nevada 89701-4717.

13      4.      David Mar, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N.
14      Carson St. Carson City, Nevada 89701-4717.

15      5.      Warden Nethanjah Brietenbach, c/o Douglas R. Rands, Office of Attorney General, 100
16      N. Carson St. Carson City, Nevada 89701-4717.

17      6.      Harold Wickham, Former Deputy Director, c/o Douglas R. Rands, Office of the
18      Attorney General, 100 N. Carson Street, Carson City, NV 89701-4717, (775) 684-1100.

19      7.      Melissa Mitchell, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N.
20      Carson St. Carson City, Nevada 89701-4717.

21      8.      Richard Long, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N.
22      Carson St. Carson City, Nevada 89701-4717.

23      9.      Shelly Conlin, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N.
24      Carson St. Carson City, Nevada 89701-4717.

25      10.     William Miller, Defendant, c/o Douglas R. Rands, Office of Attorney General, 100 N.
26      Carson St. Carson City, Nevada 89701-4717.

27      11.     NDOC Medical Director, c/o Douglas R. Rands, Office of Attorney General, 100 N.
28      Carson St. Carson City, Nevada 89701-4717.

1   12.   Custodian(s) of Record for any exhibits identified above, c/o Douglas R. Rands, Office

2   of the Attorney General, 100 N. Carson Street, Carson City, NV 89701-4717, and (775) 684-1100.

3   13   Any and all rebuttal witnesses that might be called to respond to claims made by either

4   Plaintiff or any of his witnesses.

5   14.   Any and all other witnesses that have personal knowledge supporting Defendant's

6   statements of fact or law cited herein. ob, who?

7   15.   All witnesses identified by Plaintiff, whether or not called to testify at trial.

8   Plaintiff and Defendant reserve the right to interpose objections to the calling of any named

9   witness listed above prior to or at trial.

10  **IX.   AVAILABLE TRIAL DATES**

11  Plaintiff and Defendant's Counsel expressly understand that the Clerk shall set the trial of this

12  matter at the convenience of the Court's calendar.  A jury has been requested.

13  The following are three weeks in which both parties are available:

14  ⚹ September 11, 2023 trial should be 5-7 days

15  September 18, 2023

16  September 25, 2023

17  DATED this 26 day of January, 2023.

18

19                                                          AARON D. FORD
                                                            Attorney General
20

21  _____        By:    /s/ Douglas R. Rands
    CHARLES MORRIS                           DOUGLAS R. RANDS, Bar No. 3572
22  *Plaintiff*                              Senior Deputy Attorney General

23  **IT IS ORDERED** that Jury Trial is      *Attorneys for Defendants*
    scheduled for Monday, September 11, 2023,
24  at 8:30 a.m. in Reno Courtroom 3 before
    Judge Robert C. Jones. Calendar Call is
25  scheduled for Monday, August 14, 2023, at
    10:00 a.m. in Reno Courtroom 3 before
26  Judge Robert C. Jones.
27

28  DATED: 2/1/2023                          _____
                                             ROBERT C. JONES, U.S. DISTRICT JUDGE

9

1

**CERTIFICATE OF SERVICE**

2        I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that

3  on January <u>30  </u>, 2023, I electronically filed the foregoing, **[PROPOSED] JOINT PRE-TRIAL**

4  **ORDER,** via this Court's electronic filing system. Parties that are registered with this Court's

5  electronic filing system will be served electronically. For those parties not registered, service was

6  made by depositing a copy for mailing in the United States Mail, first-class postage prepaid, at Carson

7  City, Nevada, addressed to the following:

8        Charles Morris, #62773
           Northern Nevada Correctional Center

9        P.O. Box 7000
           Carson City, Nevada 89702

10

11

12                              */s/ Roberta W. Bibee*
                                An employee of the

13                                Office of the Nevada Attorney General

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Uncontested facts

1. Morris reported back problems to NDOC at intake in 1999.

2. On February 23rd, 2015, Morris had an x-rays of lumbar spine performed.

3. On March 18th, 2015, a request was made by an NDOC practitioner for Morris to have an MRI. An appointment was made for Morris to see Dr. long

4. On April 30, 2015, Morris was transferred from lovelock Correctional Center (LCC) to nnce

5. On May 13, 2015, Morris was seen by Dr. long who reported he could not make any determination... and was unable to isolate any significant objective findings, only subjective complaints". Dr. long was not sure about recommending an M.R.I."

6. On June 1st, 2015, Morris put in an emergency grievance complaining that nothing was done to address his issues just trips back and fourth all wile his condition was worsening.

7. On June 2nd, 2015 Morris was transfered from N.N.C.C. to L.C.C.

8. On June 9th 2015, Morris submitted a kite requesting information about what Dr. long had ordered following his examination. Morris was told that Dr. long did not order anything and quoted his lack of findings.

9. On June 16, 2015, Morris was transferred from LCC to Southern Desert Correctional Center (SDCC)

10. On August 7, 2015, NDOC requested an orthopedic consult for Morris

11. Morris was seen by Dr. Wolff on November 20, 2015

12. On November 30, 2015, an MRI was requested. The Utilization

review panel (URP) authorized the MRI on December 8, 2015

13. On February 16, 2016, an MRI of the lumbar spine was performed.

14. On February 26, 2016, SDCC requested an orthopedic follow up.

15. On March 18, 2016, Dr. Wolff recommanded referral to spine for operative evaluation.

16. On March 18, 2016, Dr. Vicuna requested a spine surgeon for operative evaluation. URP authorized on March 29, 2016.

17. On May 12, 2016, Morris submitted kite indicating it is his second request for a follow up pending the reading of his MRI. He was told please wait for appointment.

18. On May 10, 2016, Morris filed informal grievance #2006-30-26975. The informal was denied. Morris appealed to level one, which was denied. Morris appealed to level two which was denied Dr. Aranas

19. On August 3, 2016, Morris submitted a medical kite indicating his condition is worsening. He was told he would be seen in 3-4 weeks.

20. On August 12, 2016, Morris was seen by Michael Schneier, MD ("Schneier") of the Khavkin Clinic, an outside medical provider. Schneier noted that Morris had tried the medication without remediation of symptons, and Morris had an MRI. Schneier's assessment was degenerative disc disease lumbar, pain lumbar and spondylolysis lumbar. Schneier ordered a "lumbar MRI w/o con-open" and a "pain management consultation." Schneier also noted "further discussion regarding the surgical planning will be based on a review of hard copy of MRI with possible need to refer for open MRI." Schneier's plan was to treat him with facet

2

and transforaminal injections at L4-L5.

21. On September 15, 2016, Morris was transfered from SDCC to NNCC.

22. On October 7, 2016 Morris was issued a walker and a cane.

23. Morris filed a medical kite on November 21, 2016

24. On January 25, 2017, NNCC requested that Morris be seen by Dr. Long.

25. On June 14, 2017, Morris was seen by Dr. Long for his "Sever lumbar spinal stenosis, with pain radiating down into lower extremities, and decreased sensation and marked weakness, particularly with ambulation." The recommendations stated that morris may continue with walker and an epidural "may" give temporary relief and recommends a neurosurgical evaluation could be considered.

26. On June 28, 2017, NNCC requested Morris be referred to Sierra Neurosurgery for eval/treatment

27. On October 6, 2017, an officer found a cell phone and charger inside Morris's pillow. Morris was served with a notice of Charges. Lt. Miller was the charging officer.

28. On October 6, 2017 Morris was moved to NNCC-U7-B-57-A.

29. On October 13, 2017, per Sierra Neurosurgery's request, NNCC requested an updated MRI lumbar prior to patient visit.

30. On November 2, 2017, Morris sent a medical kite inquiring about the status of back surgery

31. On February 2, 2018, Morris fell down the stairs

3

in his housing unit. Morris was taken by ambulance to Carson tahoe Hospital.

32. On February 2, 2018, Carson tahoe Regional Medical Center performed two MRI's of the Spine lumbar.

33. Morris was transfered to Renown Hospital.

34 On February 3, 2018, Surgery was performed by Dr. Song for a "massive L4-L5 disc herniation with dense bilateral paraparesis."

35. On February 9, 2018, NNCC requested post-op follow up appointment.

36. On February 27, 2018, Morris was provided a walker

37. On March 12, 2018, Morris filed a Grievance #2006-30-63488 relating to the injury he incurred from falling down the stairs and moving him to an upper tier. The informal was rejected due to failure to identify a remedy. Morris resubmitted. The informal was granted

38 On March 21, 2018, Morris Kited about being in pain, and was Seen on March 28, 2018

39. On May 2, 2018, Morris had left knee radiographs showing "unremarkable" impressions.

40. On December 20, 2018, NNCC requested Consult post L4-L5 bulge repair for pain continuing Since operation.

41. On January 7, 2019, Morris had an x-ray taken of his spine.

42. On or about April 4, 2019 per Dr. Song's request, MRI and x-ray prior to Morris's next visit

43 On April 8, 2019, Morris filed an emergency, Complaining about sever Pain and needing help.

- 14 -

44. On April 8, 2019, per Dr. Song's request, NNCC requested an MRI. URP authorized on April 17, 2019

45. On April 11, 2019, Morris had an x-ray taken of his lumbar spine

46. On May 28, 2019, Morris had an MRI taken.

47. On June 4, 2019, Morris was seen by a physician assistant at Advanced Neurosurgery. The assessment noted, Morris had chronic neurological defect in his left lower extremity including left foot drop as well as weakness, tingling and numbness and chronic pain" for this, he was recommended a consult to rehab without any additional surgical intervention or diagnostic testing at the time.

Plaintiff Exhibits

1. 5-13-2015 Dr. Richard long Report
2. AR. Regulation
3. Video of fall 2-18-2018
4. 8-12-2016 Khavkin Clinic Chart Notes and Progress Notes
5. loveback Dr. orders 3-18-15
6. Grievance "emerg" 6-1-15
7. 6-14-217 Dr. Richard long report
8. 2-3-2018 Dr. Michael Song; MD Operative report
9. February 2018 Renown Post-Op instructive/exercise
10. 2-23-2018 Advanced Neurosurgery Progress notes by Brian Davenport. NP.
11. 4-4-2019 Advanced Neurosurgery Prescription for MRI

5

12. 6-4-2019 Advanced Neurosurgery Progress Notes Andrew Bader P.A.

14 Medical Consultation Requests dated from 3-18-2015 through 10-10-2019

15. Medical Kites dated from 1999 through 10-1-2019 only back related.

16. Transfer/Receiving Reviewsheets dated 9-15-2016 6-16-2015, 6-2-2015, 4-30-2015.

17. Health Classification and Restrictions dated, 5-20-2015, 8-22-2016, 1-25-2017, 2-28-2018

18. Physicians Orders dated-11-24-2014 through 10-9-2019

19. Progress Notes dated 1-6-2015 through 10-10-2019

20. Radiology reports dated 5-28-2019, 4-11-2019, 1-7-2019, 5-2-2018 22-2018, 2-16-2016, 2-23-2015

21 Unusual Occurrence report dated February 2, 2018

22 Receipt for Medical device dated 2-27-2018 re: Bariatric walker

23 Receipt for medical device 10-7-2016, 8-10-2017, 2-27-2018 re: Walker and cane

24 O.P. 570.02 Bed move Coordinator; section 2-B Medical/Psyc classification/Restrictions.
    (1) Lower bunk and lower tier restriction, etc.

25 Grievance "informal" # 2006-30-59252, Improper Grievance# 2006-30-57805

26. A.R. 659

Plaintiff's Witnesses:
C/O Allison, Joseph ; unit 7B floor officer
Nomura, Kellen ; Responding Nurse
Colon, Elmo ; unit 7B floor officer
C/O HO, 7B tower officer
C/O Garcia, S.      S&E officer ; took me upstairs
Dr. Richard Long
Melissa Mitchell
Shelly Conlin
Isidro Baca
Lt. William Miller
Dr. David Mar.
Myself
Dr. Michael Schneier
Brian Davenport NP of Advanced Neurosurgery
Dr. Michael Song, M.D. of Advanced Neurosurgery
Andrew Bader P.A. of Advanced Neuro surgery
Any and all rebuttal witnesses that might be
  called to respond to claims made either by
either defendant's
Dr. Romeo Aranas
Dr. We \ nncc
Dr. Ted \ mental
Mr. B / health
Roger / department

7